UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ERIC OLIVAN,  **FIRST AMENDED COMPLAINT**

                                                                                       **20 cv 3760 (AMD) (RLM)**

                                                                                       **ECF Case**

                         Plaintiff,

       v.

NEW YORK CITY POLICE OFFICERS
MICHAEL KOBUS, UC 331, UC 127,
UC 357, UC 363, SALVATORE VIENI,
RAMON CABRAL, and WILLIAM MEYER,             **JURY TRIAL DEMANDED**
in their individual and official capacities,

                          Defendants.
-------------------------------------------------------------x

Plaintiff Eric Olivan, by his attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This action arises from various civil rights violations against Eric Olivan ("Plaintiff" or "Mr. Olivan") by New York City police officers. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for false arrest, excessive force, denial of the right to a fair trial, and failure to intervene. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and

the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (a)(4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

3. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

4. Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5. Plaintiff is a Latino male and resident of Brooklyn.

6. The individually named defendants – Police Officer (Detective) Michael Kobus (Shield # 4926) ("Det. Kobus"), Undercover Police Officer No. 331 ("UC 331"), Undercover Police Officer No. 127 ("UC 127"), Undercover Police Officer No. 357 ("UC 357"), Undercover Police Officer No. 363 ("UC 363"), Sergeant Salvatore Vieni (Shield # 3011) ("Sgt. Vieni"), Police Officer Ramon Cabral (Shield # 11714) ("PO Cabral"), and Lieutenant William Meyer ("Lt. Meyer") – are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of the City of New York ("City").

## STATEMENT OF FACTS

8. After midnight, in the early hours of January 26, 2019, Mr. Olivan was at a Brooklyn restaurant located at 4413 4th Avenue, socializing with a small group of people, including his wife (Yenni Olivan), brother (Antonio Olivan) ("Antonio"), and friend (Jessica Perez).

9. At around 3:30 a.m., Mr. Olivan saw his brother Antonio getting pushed out the restaurant by a group of unknown men, including Det. Kobus, Sgt. Vieni, PO Cabral, and Lt. Meyer.

10. These men, unknown to Mr. Olivan, were plain-clothes NYPD officers.

11. As Mr. Olivan approached his brother, some of the unknown men – including Det. Kobus – aggressively arrested Mr. Olivan, slamming him against a wall, rear-cuffing him tightly.

12. The officers ignored Mr. Olivan's complaints about the tight handcuffs, and Mr. Olivan lost feeling in his arms.

13. The officers searched Mr. Olivan, emptied his pockets, and seized his wallet.

14. Mr. Olivan possessed nothing unlawful or suspicious.

15. Mr. Olivan possessed no contraband.

16. Mr. Olivan possessed no pre-recorded buy money.

17. The officers also arrested Antonio.

18. Upon information and belief, a "buy-and-bust" operation had taken place in the restaurant involving at least four undercover officers, including defendants UC 331, UC 127, UC 357, and UC 363.

19. Upon information and belief, the undercover officers in the restaurant transmitted over police radio (known as "KELs") descriptions of anybody they believed to be involved in selling drugs.

20. At no point did any of the undercover officers in the restaurant describe or identify Mr. Olivan as someone involved in possessing or selling drugs.

21. After arresting Mr. Olivan, NYPD officers placed him a police van, where another arrestee stated, upon seeing Mr. Olivan (and, upon information and belief, after having heard transmissions over the KEL device), that the police had the wrong guy because they were looking for a Black man (Mr. Olivan is not Black).

22. The individual defendants decided to falsely accuse Mr. Olivan of possessing cocaine and acting in concert with Antonio to sell cocaine.

23. None of the individual defendants did anything to stop or report this false accusation.

24. Nor did any of the other officers involved in this buy-and-bust operation – Officer Richard Fuentes, Shield 11714; Sergeant James Gatto, Shield 01428; Detective Ugur Bek, Shield 237; Detective Richard Rodriguez, Shield 5376; Detective Jeffrey Joonoos, Shield 4569; Detective Vincent Dibenedetto, Shield 2532; Detective Matthew Defendis, Shield 1190; Detective Michael Dama, Shield 1098; Detective Christopher Geiner, Shield 1425 – do anything to stop Plaintiff's arrest, detention, and impending criminal prosecution.

25. Mr. Olivan's behavior at the restaurant had been lawful and innocent. At no point did Mr. Olivan engage in any wrongful or suspicious conduct, nor did he possess drugs or have any knowledge about drug activity.

26. The individual defendants knew that Mr. Olivan neither possessed nor sold cocaine.

27. The individual defendants knowingly forwarded to the Kings County District Attorney's Office (the "D.A.") the fabricated story that Mr. Olivan was acting in concert with his brother Antonio in selling cocaine.

28. Based on this fabrication, the D.A. charged Mr. Olivan with the misdemeanor of possessing cocaine (a controlled substance) under New York Penal Law ("PL") Section 220.03, as well as with two class B felonies: Criminal sale of a controlled substance in the third degree under PL 220.39(1), and Criminal possession of a controlled substance (with the intent to sell) in the third degree under PL 220.16(1). Class B felonies are punishable in New York by up to 25 years in prison, and not less than one year in prison.

29. Had the defendant officers falsely accused Mr. Olivan of just misdemeanor cocaine possession under PL 220.03 – and not of two class B felonies based on selling cocaine – Mr. Olivan would have been eligible for a Desk Appearance Ticket ("DAT"). *See generally* NYPD Patrol Guide Procedure No. 208-27 – Desk Appearance Ticket – General Procedure. NYPD officers can exercise their discretion to issue DATs in lieu of detention, enabling arrestees to be released from custody sooner than if they are detained through their arraignments.

30. At the time of Mr. Olivan's arrest, arrestees were eligible for DATs if they were charged with misdemeanors or class E felonies, and also satisfied other criteria, such as having a verified New York address and no outstanding warrants. If Olivan were charged only with the misdemeanor of cocaine possession, he would have satisfied the criteria making him eligible for a Desk Appearance Ticket.

31. New York police officers have exercised their discretion to issue DATs to defendants arrested for and charged with possession of controlled substances in violation of PL 220.03. *See e.g. People v. David*, 44 Misc.3d 1212(A) (N.Y. Cnty. Crim. Ct. Jan. 22, 2014); *People v. Rodriguez*, 27 Misc. 3d 135(A) (2d. Dept. 2010); *People v. Barbara*, 152 Misc.2d 104 (Queens Cnty. Crim. Ct. Aug. 16, 1991); *People v. Garrett*, 171 A.D. 2d 153 (2nd Dept. 1991); *Gaul v. Ward*, 159 A.D.2d 380 (1st Dept. 1990); *People v. Fletcher*, 113 Misc.2d 5 (N.Y. Cnty. Sup. Ct. Feb. 26, 1982).

32. Rather than being issued a DAT, Mr. Olivan was booked and processed at the police precinct, then transported to Central Booking in downtown Brooklyn, then arraigned in the late evening of January 26, 2019 in Kings County Criminal Court on Docket Number CR-003596-19KN.

33. The Criminal Court Complaint was sworn to by Det. Kobus and based on false information allegedly provided to him by UC 331.

34. According to the Complaint, UC 331 "observed" Mr. Olivan and Antonio "acting in concert" to sell UC 331 cocaine. Specifically, as alleged in the Complaint, UC 331 "handed" Antonio money, Antonio "touch[ed] hands" with Mr. Olivan, and Antonio "handed informant [UC 331] a ziplock bag containing cocaine."

6

35. The individual defendants knew that Mr. Olivan never physically engaged – let alone exchanged objects – with Antonio in the midst of any alleged cocaine transaction.

36. The Judge at Mr. Olivan's arraignment released him on his own recognizance but ordered him to return to Criminal Court under the threat of having a warrant issued if he did not appear.

37. Because of the criminal charges lodged against him, Mr. Olivan had to appear in Criminal Court five times – on January 29, March 28, May 8, June 6, and July 10, 2019 – over the course of the next five and a half months.

38. On March 28, 2019, the D.A. dismissed the two felony charges against Mr. Olivan on the ground that there was no viable felony charge, leaving the sole misdemeanor charge of criminal possession of a controlled substance.

39. On July 10, 2019, Mr. Olivan's prosecution was resolved with an Adjournment in Contemplation of Dismissal, and six months later (on January 9, 2020), all charges against him were formally dismissed.

40. As a result of his false arrest and the stress of being falsely accused, Mr. Olivan suffered loss of liberty, psychological and emotional distress, and the loss of hair on his head.

**DELIBERATE ACTS UNDER COLOR OF STATE LAW**

41. All of the aforementioned acts of the individual defendants, their agents, servants and employees, were carried out under the color of state law in the course and scope of their duties.

42. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

43. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

**DAMAGES**

44. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

   b. Physical pain and injury;

   c. Severe emotional trauma, distress, degradation, and suffering.

<u>**SECTION 1983 CLAIMS**</u>

<u>**FIRST CLAIM**</u>

**Denial of the Right to a Fair Trial Under Section 1983**

45. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

46. By the actions described, the Defendants deprived Plaintiff of his Fourth, Fifth, and Fourteenth Amendment rights to a fair trial.

47. The individual defendants deliberately forwarded fabricated information – including false allegations of possessing and selling cocaine – to the Brooklyn District Attorney's Office.

48. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### Excessive Force Under Section 1983

49. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

50. By the actions described, the individual defendants – specifically, the ones that aggressively handcuffed him – deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from excessive and unreasonable force.

51. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### False Arrest Under Section 1983

52. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

53. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

54. By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free from false arrest.

55. As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

56. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Failure to Intervene Under Section 1983

57. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

58. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

59. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

60. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

    a. An order awarding compensatory damages for Plaintiff Eric Olivan in an amount to be determined at trial;

    b. An order awarding punitive damages in an amount to be determined at trial;

    c. A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

        d.      Such other and further relief as this Court may deem appropriate.

DATED:    March 5, 2021                      /s/
                  New York, New York      CYRUS JOUBIN, ESQ.
                                                  43 West 43rd Street, Suite 119
                                                  New York, NY 10036
                                                  (703) 851-2467
                                                  joubinlaw@gmail.com
                                                  Attorney for Eric Olivan